[648 NYS2d 535]

JOSEPH M. MULDER, Respondent, v DONALDSON, LUFKIN & JENRETTE, Appellant, et al., Defendant.

First Department, October 8, 1996

## APPEARANCES OF COUNSEL

*D. Scott Wise* of counsel, New York City *(Nancy B. Ludmerer* and *Stephen T. Vehslage, Jr.,* on the brief; *Davis Polk & Wardell,* attorneys), for appellant.

*Leslie Trager* of counsel, New York City *(Morley & Trager,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

The issue presented on this appeal concerns whether the IAS Court properly denied defendant's motion to compel arbitration of plaintiff's punitive damages claim in light of the recent United States Supreme Court decision in *Mastrobuono v Shearson Lehman Hutton* (514 US —, 115 S Ct 1212).

Plaintiff Joseph M. Mulder (Mulder) has been a member of the Securities Industry Association for approximately 25 years and had been employed as a vice-president and senior operations auditor by defendant Donaldson, Lufkin & Jenrette (DLJ), a registered New York securities firm. Plaintiff, over the course of his duties as a senior operations auditor, conducted an audit of the Miami office of DLJ and reported, internally, various violations of its brokerage policies, as well as the rules of the Securities and Exchange Commission, the New York Stock Exchange and the laws of the United States.

As set forth in depth in a previous decision of this Court (*Mulder v Donaldson, Lufkin & Jenrette*, 208 AD2d 301 [Asch, J.]), plaintiff's report detailed a corporate account which was partially under the control of a lawyer who had been linked to a money-"laundering" scheme in an indictment of former drug lord Pablo Escobar. After the information about Escobar became public, plaintiff's supervisor was informed that the account, containing approximately $10,000,000 in Government-backed securities, would be "repackaged" as an offshore trust.

Plaintiff's report further stated that once the account did return as an offshore corporation with the same securities, none of the individuals in control of the corporation were listed, in further violation of the rules of the Securities and Exchange

Commission and the New York Stock Exchange. In addition, money was accepted from third parties and sent to other third parties who had no apparent relationship to accounts at DLJ, which actions again violated the brokerage's rules; and large amounts of money were wired overseas to third parties in "secrecy" countries in a manner which concealed the name of the brokerage customer wiring the funds.

Subsequent to the distribution of his report, plaintiff discovered that blank checks were filled out by a salesman in DLJ's Miami office for funds, in some instances exceeding $400,000, and that a check issued by DLJ for $80,000 was deposited in an account seized by the Federal Government as containing drug-related funds linked to Escobar's drug empire.

A meeting was held in March 1991 by DLJ to discuss some of the issues raised by plaintiff's report and as a result thereof, certain procedures were adopted, including a prohibition, contained in a memorandum issued by defendant Robert Albano, a compliance director of DLJ, against the practice of receiving third-party checks and sending wires to third parties. Plaintiff, however, learned that the rules promulgated as the result of the meeting were not being followed, and he wrote to Albano in that regard. Plaintiff asserts that when he failed to hear from Albano, he telephoned him and that Albano, after using an expletive and indicating he didn't want to be bothered any further, hung up on him. Two weeks later, plaintiff was fired by Albano.

Plaintiff thereafter brought an arbitration proceeding before the New York Stock Exchange (NYSE) pursuant to the arbitration agreement in plaintiff's Form U-4 registration application, maintaining that he was dismissed not only for reporting the alleged violations of rules and regulations to, among others, Albano, but also because DLJ wished to conceal its continued participation in the money-laundering operations of its customers, and the violations of securities laws. Plaintiff sought compensatory damages and punitive damages. DLJ denied the allegations, contending that plaintiff was discharged due to poor job performance.

In May 1993, the NYSE issued an arbitration award in favor of plaintiff in the amount of $114,668 for compensatory damages, plus costs of $1,000. The arbitrator did not address the issue of punitive damages.

Plaintiff thereafter commenced the underlying action by the service of a summons and complaint to pursue his punitive damages claim. The first cause of action seeks punitive dam-

ages as the result of DLJ's alleged bad-faith dismissal of plaintiff and its refusal to report the violations of law plaintiff uncovered to the proper authorities; the second and third causes of action seek compensatory and punitive damages for slander. Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) and the IAS Court, in a decision dated May 16, 1994, denied the motion with regard to the first cause of action and granted it as to the second and third causes of action, on the grounds that those causes of action were barred by the absolute privilege set forth in Civil Rights Law § 74 (*see, Mulder v Donaldson, Lufkin & Jenrette*, 161 Misc 2d 698). By decision and order entered March 7, 1995 (208 AD2d 301, *supra*), this Court affirmed the IAS Court.

In sustaining the first cause of action, Justice Schackman held that despite the prior arbitration of the underlying substantive claims for wrongful discharge, plaintiff's action for punitive damages was viable since arbitrators were not empowered to award punitive damages, as such sanctions were reserved to the State courts as a matter of policy (*see, Garrity v Lyle Stuart, Inc.*, 40 NY2d 354). This Court agreed with the IAS Court that since an arbitrator could not award punitive damages under the holding of *Garrity*, the plaintiff's first cause of action should be sustained.

Defendant subsequently moved for leave to reargue, or to appeal to the Court of Appeals, on the basis of *Mastrobuono v Shearson Lehman Hutton (supra)*, which had been decided on March 6, 1995, just one day prior to the entry of this Court's order affirming the IAS Court. Defendant's motion was denied without opinion.

Defendant thereafter filed a motion before the IAS Court to compel arbitration of the punitive damages claim, arguing that under *Mastrobuono (supra)* and *Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith* (85 NY2d 173), plaintiff's claim is subject to mandatory arbitration as it is now clear that the Federal Arbitration Act (FAA) preempts the rule of *Garrity*. Justice Schackman denied the motion to compel arbitration on the ground that this Court's denial of defendant's motion to compel arbitration and the subsequent denial of reargument constitutes the law of the case. Defendant appeals and we now reverse.

In *Mastrobuono (supra)*, petitioners commenced an action in the United States District Court for the Northern District of Illinois alleging that respondents, Shearson Lehman Hutton, Inc. and certain brokers in its employ (to be referred to collec-

tively herein as Shearson), had mishandled their accounts. Respondents moved to stay the court proceedings and to compel arbitration, relying on paragraph 13 of the parties' standard-form Client's Agreement, which contained both an arbitration provision and a choice-of-law provision. Respondents' motion was granted and the parties proceeded to arbitration.

The parties' agreement in *Mastrobuono* (514 US, *supra*, at —, n 2, 115 S Ct, *supra*, at 1216-1217) provided, *inter alia*, that the agreement " 'shall be governed by the laws of the State of New York' " and that any dispute shall be " 'settled by arbitration in accordance with the rules then in effect, of the National Association of Securities Dealers' ". At the conclusion of the hearings, the arbitrators issued an award granting the Mastrobuonos $159,327 in compensatory damages and $400,000 in punitive damages. Respondents challenged the award of punitive damages based on New York law, and the District Court vacated that portion of the award (812 F Supp 845), which decision was affirmed by the United States Court of Appeals for the Seventh Circuit (20 F3d 713). In reaching their conclusion, both the District Court and the Court of Appeals relied upon the New York choice-of-law provision and the New York Court of Appeals decision in *Garrity v Lyle Stuart, Inc.* (*supra*) and its progeny, prohibiting arbitral awards of punitive damages.

The United States Supreme Court granted certiorari (*Mastrobuono v Shearson Lehman Hutton,* 514 US —, 115 S Ct 305) and reversed the lower courts, finding that if the parties' arbitration agreement contemplates an award of punitive damages, a New York choice-of-law clause will not prevent an arbitrator from awarding such relief. The court stated: "we think our decisions in *Allied Bruce, Southland* and *Perry* make clear that if contracting parties agree to *include* claims for punitive damages within the issues to be arbitrated, the [Federal Arbitration Act] ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration. Thus, the case before us comes down to what the contract has to say about the arbitrability of petitioners' claim for punitive damages." (514 US, *supra*, at —, 115 S Ct, *supra*, at 1216.)

In the matter at bar, the arbitration agreement found in plaintiff's Form U-4 contains no choice-of-law provision and makes no special provision for punitive damages claims. However, by requiring the arbitration of "all disputes" according to the rules of the NYSE, the American Stock Exchange, or the National Association of Securities Dealers (NASD), the

contracting parties implicitly recognized that punitive damages are subject to arbitration. Indeed, in this case, the parties proceeded under NASD rules and, as noted by the Supreme Court in *Mastrobuono* (514 US, *supra,* at —, 115 S Ct, *supra,* at 1218), a manual provided to NASD arbitrators contains the following provision:

" 'B. Punitive Damages

" 'The issue of punitive damages may arise with great frequency in arbitrations. Parties to arbitration are informed that arbitrators can consider punitive damages as a remedy.' "

The Court further found that a choice-of-law provision "may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship" (514 US, *supra,* at —, 115 S Ct, *supra,* at 1217) and, therefore, a choice-of-law provision, when accompanied by an arbitration provision as found in the agreement, "encompass[es] substantive principles that New York courts would apply, but not * * * special rules limiting the authority of arbitrators" (514 US, *supra,* at —, 115 S Ct, *supra,* at 1219; *see also, PaineWebber Inc. v Bybyk,* 81 F3d 1193, 1200 [2d Cir]). In sum, the decision of the Supreme Court in *Mastrobuono* makes it unmistakably clear that, with respect to arbitration proceedings governed by the FAA which preempts the *Garrity* rule, the arbitration of punitive damage claims is required except where the parties have unequivocally agreed otherwise. Since the parties did not explicitly agree to exclude the award of punitive damages from arbitration, and it is implicit in the agreement that punitive damages are subject to arbitration, we find that the issue of punitive damages should be heard by the arbitrators.

We also reject plaintiff's argument, adopted by the IAS Court, that the issues relating to the application of *Mastrobuono (supra)* had already been considered, and rejected, by this Court in a motion for reargument, which constitutes the law of the case. In the first instance, this Court's denial of reargument, which is a purely discretionary decision, did not specify the basis for the decision and, therefore, should not have served as a basis for the IAS Court's denial of DLJ's motion.

Secondly, in the motion for reargument made before this Court, defendant maintained that the arbitrators had the authority, during the original arbitration proceeding, to award punitive damages. Defendant further maintained that the

arbitrators exercised that power and awarded no punitive damages, thus barring the further prosecution of this case under the doctrines of res judicata and collateral estoppel. In sharp contrast, defendant's present motion is addressed to the arbitrability of plaintiff's pending cause of action for punitive damages under *Mastrobuono (supra)* and the FAA, rather than asking the court to ascribe a certain meaning to the 1993 award or to give it preclusive effect. Since this issue was not actually resolved on the merits in the prior decision, the law of the case doctrine does not apply (*Locilento v Coleman Catholic High School*, 134 AD2d 39, 43).

Accordingly, the order of the Supreme Court, New York County (Walter Schackman, J.), entered on or about January 24, 1996, which denied defendant's motion to compel arbitration of plaintiff's first cause of action for punitive damages, is reversed, on the law, without costs, the motion is granted, the court action is stayed and the parties are directed to proceed to arbitration.

MILONAS, J. P., ROSENBERGER and ROSS, JJ., concur.

Order, Supreme Court, New York County, entered on or about January 24, 1996, reversed, on the law, without costs, the motion to compel arbitration of plaintiff's first cause of action for punitive damages granted, the court action stayed and the parties directed to proceed to arbitration.