[651 NYS2d 973]

In the Matter of the Arbitration between R.C. Layne Construc-tion, Inc., Appellant, and Stratton Oakmont, Inc., et al., Respondents.

First Department, December 24, 1996

46

**APPEARANCES OF COUNSEL**

*Leonard F. Lesser* of counsel *(Schneck Weltman Hashmall & Mischel, L. L. P.,* attorneys), for appellant.

*Fredda L. Plesser* of counsel *(Martin P. Unger* and *Norman B. Arnoff* on the brief; *Tenzer Greenblatt, L. L. P.,* and *Capuder & Arnoff, P. C.,* attorneys), for respondents.

**OPINION OF THE COURT**

MAZZARELLI, J.

In July 1992 petitioner R.C. Layne Construction, Inc., a construction company based in Elko, Nevada, opened a brokerage account with respondent Stratton Oakmont, Inc. (Stratton), a New York-based brokerage firm and member of the National Association of Securities Dealers, Inc. (NASD). Respondent Jordan Shamah is an employee of Stratton who, from August 1992 through January 1993, managed petitioner's brokerage account, and was responsible for the vast majority of petitioner's trading activity that was the subject of the arbitration underlying this appeal.

Petitioner executed a Customer Agreement with Bear Stearns Securities Corp., which served as Stratton's clearing agent. The Customer Agreement restricted petitioner's remedies to arbitration in the event of a controversy concerning the account. The arbitration clause provides:

"22. ARBITRATION

"- ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

"- THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

"- PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

"- THE ARBITRATOR'S AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED. * * *

"YOU AGREE, AND BY MAINTAINING AN ACCOUNT FOR YOU BEAR STEARNS SECURITIES AGREES, THAT CONTROVERSIES ARISING BETWEEN YOU AND BEAR STEARNS SECURITIES CONCERNING YOUR ACCOUNTS ON THIS OR ANY OTHER AGREEMENT BETWEEN YOU AND BEAR STEARNS SECURITIES * * * SHALL BE DETERMINED BY ARBITRATION. ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE HELD AT THE FACILITIES AND BEFORE AN ARBITRATION PANEL APPOINTED BY THE NEW YORK STOCK EXCHANGE, INC., THE AMERICAN STOCK EXCHANGE, INC., OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. (AND ONLY BEFORE SUCH EXCHANGE). YOU MAY ELECT ONE OF THE FOREGOING FORUMS FOR ARBITRATION".

The Customer Agreement also contains a New York choice-of-law provision, that reads as follows: "21. NEW YORK LAW TO GOVERN. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF NEW YORK AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK."

In January 1993, after having suffered significant financial losses on purchases recommended by various Stratton employees, petitioner terminated its trading relationship with respondents. Pursuant to the arbitration clause of the Customer Agreement, petitioner then elected to proceed to arbitration before NASD and filed a Statement of Claim and Request for Arbitration against respondent Stratton and certain named individuals. Petitioner alleged that it had been the victim of various frauds and breaches of fiduciary duty, and that unsuitable and speculative securities had been traded in the securities account. The thrust of petitioner's claims was that, notwithstanding their knowledge that petitioner was limited by bonding requirements in both the degree of risk and the type of securities it could purchase, respondents engaged in a course of tortious conduct by recommending investments they

knew to be inconsistent with petitioner's investment needs. Thus, as set forth in the Statement of Claim, petitioner sought compensatory damages exceeding $279,000 and "[p]unitive damages in an amount to be determined by the arbitrators."

To submit their dispute to NASD, petitioner and respondents all executed Uniform Submission Agreements wherein they expressly agreed to have their dispute arbitrated in accordance with NASD's Rules, Regulations and Code of Arbitration Procedure. The arbitration at issue was then conducted over three days in Las Vegas, Nevada, before a panel of three arbitrators appointed by NASD. Respondent Freedman entered into a settlement with petitioner. The arbitrators ultimately awarded petitioner a total of $546,275.01, of which $265,005.01 was granted only as against Stratton, while the balance was assessed against respondents Stratton and Shamah jointly and severally. Of this award, $285,187.51 consisted of compensatory damages, and the balance was comprised of punitive damages.

Petitioner moved to confirm the arbitration award and respondents cross-moved to vacate it. Respondents argued below, as they do on appeal to this Court, that because the Customer Agreement provides that New York law governs determinations relating to the "rights and liabilities of the parties", the arbitrators did not have the authority to award punitive damages. Relying on *Garrity v Lyle Stuart, Inc.* (40 NY2d 354), respondents contend that the punitive damages portion of the award contravenes the rule articulated by the Court of Appeals that, as a matter of policy, punitive damages are a remedy reserved to the courts. Petitioner responds that the United States Supreme Court decision in *Mastrobuono v Shearson Lehman Hutton* (514 US 52) requires us to look at the terms of the Customer Agreement, and that, in the absence of language prohibiting the arbitrators from considering punitive damages claims, such claims should be permitted to be arbitrated. In seeking to vacate the compensatory damages portion of the award, the respondents argued that the arbitrators did not permit them to attack the veracity of a document received into evidence and that they failed to discount the award pursuant to the New York General Obligations Law for respondent Freedman's settlement with petitioner.

The motion court adopted respondents' view and vacated the award in its entirety. In explaining why it agreed with the respondents that the arbitrators could not entertain petition-

er's punitive damages claim, the motion court attempted to distinguish *Mastrobuono* as follows: "However, here the arbitration agreement, unlike the one in *Mastrobuono, supra,* makes an explicit reference to the liabilities of the parties, which must of necessity include the question of punitive damages and states that such liabilities will be arbitrated in accordance with the law of the State of New York, which do not permit arbitrators to award punitive damages." The motion court vacated the arbitration award, holding that, as a matter of law, the arbitrators were not empowered to award punitive damages and that the award of compensatory damages was not supported by the record. We reverse.

In *Mastrobuono*, the Supreme Court permitted a panel of NASD arbitrators in Illinois to award punitive damages despite the presence of a choice-of-law clause choosing New York law in the parties' arbitration agreement. The Supreme Court held that the mere fact that an agreement contains a New York choice-of-law clause does not bar arbitrators from awarding punitive damages; rather, the determinative question is what was contemplated by the parties' agreement. Indeed, in this Court's recent decision in *Mulder v Donaldson, Lufkin & Jenrette* (224 AD2d 125, 130), we compelled the parties to proceed to arbitration on a claim for punitive damages "[s]ince the parties did not explicitly agree to exclude the award of punitive damages from arbitration, and it is implicit in the agreement that punitive damages are subject to arbitration". We so held in *Mulder* notwithstanding that the arbitration agreement therein did not contain a choice-of-law provision and made no special provision for punitive damages. In reaching this result in *Mulder (supra,* at 129), we focused on the arbitration agreement's language requiring " 'all disputes' " to be arbitrated.

We are unpersuaded that the language contained in the Customer Agreement at bar stating that "the rights and liabilities of the parties" are to be determined in accordance with New York law constitutes the kind of "explicit reference" to punitive damages envisaged by *Mastrobuono (supra)*. To the contrary, the choice-of-law provision at bar clearly is not "an unequivocal exclusion of punitive damages claims" (*Mastrobuono v Shearson Lehman Hutton,* 514 US, *supra,* at 60) and the inclusion of the words "and liabilities" in the instant choice-of-law clause does not distinguish this case from *Mastrobuono (see, Greening v Stratton Oakmont,* 1996 WL 61095, 5, n 6 [Dist Ct, ND Cal, Feb. 5, 1996, Illston, J.] [rejecting precise

arguments made in the case at bar]). Applied to the agreement at bar, our approach in *Mulder* mandates that the punitive damages award in the case at bar also be upheld. While this case differs from *Mulder* in that here the Customer Agreement contains a New York choice-of-law clause, here, as in *Mulder*, the parties have not unequivocally agreed to preclude the arbitrators from considering punitive damages. Nothing contained in Clause 22 of the Customer Agreement provided notice to the petitioner, who was presented with this preprinted form agreement to sign when opening the brokerage account, that punitive damages could not be awarded. At most, the inclusion of the words "and liabilities" creates an ambiguity with respect to whether the parties agreed to exclude a punitive damages award by an arbitrator in light of the arbitration clause, and "respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it." (*Mastrobuono v Shearson Lehman Hutton*, 514 US, *supra*, at 62.) The Customer Agreement's reference to NASD as one of the forums of arbitration and the Uniform Submission Agreements executed by the parties made clear that the parties were subjecting themselves to NASD's rules, which clearly permit arbitrators to award punitive damages. Thus, we discern no basis upon which to distinguish this matter from *Mastrobuono* or *Mulder*. We note that our approach is consistent with the trend of most court decisions since *Mastrobuono* was decided (*see, e.g., Smith Barney v Schell*, 53 F3d 807 [7th Cir 1995]; *Kelley v Michaels*, 59 F3d 1050 [10th Cir 1995]; *Davis v Prudential Sec.*, 59 F3d 1186 [11th Cir 1995]; *Shearson Lehman Bros. v Neurosurgical Assocs.*, 896 F Supp 844 [SD Ind 1995]; *PaineWebber, Inc. v Landay*, 903 F Supp 193 [D Mass 1995]; *PaineWebber, Inc. v Richardson*, 1995 WL 236722 [Dist Ct, SD NY, Apr. 21, 1995, Schwartz, J.]; *Greening v Stratton Oakmont, supra*; *Dean Witter Reynolds v Printy*, 1995 WL 731477 [Minn Ct App, Dec. 12, 1995, Schumacher, J.]; *In re Estate of Sandefur v Greenway*, 898 SW2d 667 [Mo Ct App, WD, Mar. 28, 1995]) and is consistent with the Federal Arbitration Act's policy favoring arbitration (*see*, Bencivenga, *Securities Arbitration, "Garrity" Rejected in Punitive Damages Ruling*, NYLJ, Oct. 17, 1996, at 5, col 2). Finally, the reference by arbitrators in their decision to a Nevada statute is not a basis for setting aside the punitive damages award. Thus, the motion court erred in setting aside the punitive damages portion of the arbitration award.

■ Furthermore, we have considered the respondents' arguments relating to the evidentiary rulings vis-à-vis the profit and loss statement and the alleged failure of the arbitrators to properly discount the award to account for the settlement of one of the individually named respondents. We find none of these rationales for vacating the compensatory damages portion of the award to be persuasive. Moreover, assuming the record supported respondents' contentions that the arbitrators committed the alleged evidentiary errors, these contentions would not provide a basis for vacating the award (*see, Folkways Music Publs. v Weiss*, 989 F2d 108, 111 [2d Cir 1993]; *Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308). Also, even if respondents could demonstrate that the arbitrators misapplied General Obligations Law § 15-108, that still would not be a justification to vacate the award (*see, Matter of Albany County Sheriff's Local 775 [County of Albany]*, 63 NY2d 654). "[C]ourts may vacate [arbitration] awards only for an overt disregard of the law and not merely for an erroneous interpretation" (*Folkways Music Publs. v Weiss, supra,* at 111). Therefore, it was also error for the motion court to vacate the compensatory damages portion of the arbitration award.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Charles Ramos, J.), entered October 17, 1995, which denied petitioner's application to confirm the arbitration award and granted respondents' cross motion to vacate the award, is reversed, on the law and the facts, without costs, the motion to confirm granted in its entirety and the cross motion to vacate denied.

ELLERIN, J. P., RUBIN, KUPFERMAN and WILLIAMS, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered October 17, 1995, reversed, on the law and the facts, without costs, the motion to confirm the arbitration award granted in its entirety and the. cross motion to vacate the award denied.