■ In the Matter of AMERICORP SECURITIES, INC., Respondent, v FELICIA SAGER et al., Appellants. [656 NYS2d 762] —Order, Supreme Court, New York County (Jane Solomon, J.),

entered May 13, 1996, which granted the petition to stay arbitration of respondents' claims for punitive damages and attorneys' fees, and denied respondents' cross motion to dismiss the petition, unanimously reversed, on the law, without costs, the petition denied and the parties directed to proceed to arbitration.

The motion to stay arbitration of the claims for punitive damages and attorneys' fees was improperly granted because the parties' arbitration agreement did not unequivocally exclude such relief, but rather implied that these claims were arbitrable (*see, Mulder v Donaldson, Lufkin & Jenrette,* 224 AD2d 125; *Matter of Layne Constr. [Stratton Oakmont],* 228 AD2d 45; *Hamershlag, Kempner & Co. v Oestrich,* 234 AD2d 172; *Merrill Lynch, Pierce, Fenner & Smith v Adler,* 234 AD2d 139). We reject petitioner's unpreserved contention that the parties' explicit acceptance of the rules and Code of Arbitration Procedure of the National Association of Securities Dealers ("NASD"), which permit such relief, was necessary to a finding of arbitrability (*see, Hamershlag, Kempner & Co. v Oestrich, supra*).

Contrary to petitioner's assertion, the language in the agreement stating that the "rights and liabilities" of the parties shall be determined in accordance with New York law did not amount to such an unequivocal exclusion (*Matter of Layne Constr. [Stratton Oakmont], supra; see also, Mastrobuono v Shearson Lehman Hutton,* 514 US 52). Construed against its drafter, petitioner herein,* this ambiguous language was insufficient to invoke New York's restrictions on arbitral awards of punitive damages (*see, Garrity v Lyle Stuart, Inc.,* 40 NY2d 354) and attorneys' fees (CPLR 7513). Accordingly, these claims should proceed to arbitration.

An issue of the retroactive application of our recent decisions in this area has been raised. The order appealed from was issued on May 13, 1996, and *Mulder v Donaldson, Lufkin & Jenrette (supra),* the first of these cases, was decided on October 8, 1996. Respondent moved to reargue the May 13 order in November 1996, and the IAS Court denied the motion on the grounds that *Mulder* should be applied prospectively only.

Traditionally, cases on direct appeal will be decided in accordance with the law as it exists at the time the appeal is decided

---

* The drafter of the arbitration agreement was actually Bear Stearns, Inc., petitioner's clearing agent. However, there is no dispute that petitioner utilized it as its own customer agreement, and that petitioner is the real party in interest here.

(*see, People v Favor*, 82 NY2d 254, 260; *Gurnee v Aetna Life & Cas. Co.*, 55 NY2d 184, *cert denied* 459 US 837). However, where a new rule of law is announced, courts are empowered to apply it prospectively only (*People v Favor, supra*, at 261-262). When confronted with an appeal involving a new rule of law, an appellate court must consider three factors in determining whether the rule should be given retroactive application: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application (*supra*, at 262; *see also, People v Mitchell*, 80 NY2d 519; *People v Pepper*, 53 NY2d 213, 219, *cert denied* 454 US 967).

Before reaching any of these factors, the threshold question of whether the ruling at issue is really a new rule of law at all must be answered (*People v Favor, supra*, at 262-263). A rule of law will be considered new where it overrules established precedent (*see, Graham v Collins*, 506 US 461), where it constitutes a sharp break in the continuity of the law, whose impact might wreak havoc on society (*see, Gager v White*, 53 NY2d 475, 483, *cert denied sub nom. Guertin Co. v Cachat*, 454 US 1086), or where it represents "a dramatic shift away from customary and established procedure" (*People v Mitchell*, 80 NY2d 519, 525, *supra*). By contrast, a ruling will not be considered new where it "merely applies previously established principles in a new factual setting or settles a question in a manner that was clearly foreshadowed" (*People v Favor, supra*, at 263; *see also, Gurnee v Aetna Life & Cas. Co., supra*, at 192; *Chevron Oil Co. v Huson*, 404 US 97, 106).

Under these principles, we conclude that our recent decisions in this area did not establish a new rule of law. Rather, they were clearly based on the Supreme Court's holding in *Mastrobuono (supra)*, and, thus, we were simply applying the relevant facts to the controlling principle of law in existence at the time. Additionally, although the *Garrity* rule prohibited arbitrators from awarding punitive damages, the preemptive effect of the Federal Arbitration Act (9 USC § 1 *et seq.* [FAA]) on inconsistent State rules was clearly foreshadowed in our own case law (*see, Fletcher v Kidder, Peabody & Co.*, 81 NY2d 623, *cert denied* 510 US 993 [FAA preempts State public policy of prohibiting arbitration of unlawful discrimination claims]).

Even if our decisions were construed as establishing a new rule of law, consideration of the three *Pepper-Mitchell* factors convinces us that the general retroactivity rule should apply. First, our decisions clearly further the underlying purpose of the FAA, to ensure the enforceability of private arbitration

agreements according to their terms (*see, Volt Information Sciences v Stanford Univ.*, 489 US 468, 476). In finding arbitrability and enforcing the agreements, we were guided by the principle that in agreements covered by the FAA, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration" (*Volt Information Sciences v Stanford Univ., supra,* at 476; *see also, Mastrobuono v Shearson Lehman Hutton, supra*).

Second, petitioner's reliance on the *Garrity* rule was unjustified in light of the judicial recognition of the FAA's preemptive effect in *Mastrobuono (supra)*, and in our own decisions (*see, Fletcher v Kidder, Peabody & Co., supra; see also, Matter of Smith Barney, Harris, Upham & Co. v Luckie*, 85 NY2d 193). Further undermining petitioner's claim of reliance was the notice given to member brokerages by the Securities and Exchange Commission, and the NASD, that language in customer agreements limiting the right to remedies such as punitive damages was disfavored (*see,* Securities and Exchange Act Release No. 26805 [1989]; NASD Notice to Members 95-16, Mar. 1995, at 102).

Third, petitioner's assertion that retroactive application of this rule would have an adverse impact on the administration of justice is not persuasive. Its prediction of "wholesale reversals" is both exaggerated and speculative (*see, People v Favor, supra,* at 266).

In sum, nothing justifies a departure from the general rule that cases on direct appeal should be decided in accordance with the law as it exists at the time they are decided. Accordingly, *Mulder (supra), Matter of Layne Constr. (Stratton Oakmont) (supra), Hamershlag, Kempner & Co. v Oestrich (supra)*, and *Merrill Lynch, Pierce Fenner & Smith v Adler (supra)* are the established precedent and will be followed. Concur—Ellerin, J. P., Nardelli, Rubin and Mazzarelli, JJ.