**Daniel M. PORUSH, Plaintiff,**

v.

**Claire LEMIRE, as executrix of the Estate of Raymond C. Lemire, and Management Realty Corporation, Defendants.**

**No. CV 97–2174.**

United States District Court,
E.D. New York.

May 20, 1998.

Tenzer Greenblatt, LLP, by Martin P. Unger, New York, NY, for Plaintiff.

John E. Lawlor, Mineola, NY, for Defendants.

### MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Daniel M. Porush moves for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, vacating an arbitral award against him. Plaintiff contends that the award is unsupported by any record evidence and that the arbitrators acted in excess of their powers and in manifest disregard of the law. Because these contentions are meritless, we deny plaintiff's motion and grant defendants' cross-motion to confirm the award. The Court's jurisdiction is based on diversity between the New York plaintiff and the New Hampshire defendants.

### BACKGROUND

At all relevant times, Daniel M. Porush was president of Stratton Oakmont, Inc., ("Stratton Oakmont"), a New York-based brokerage firm and member of the National Association of Securities Dealers ("NASD").[1] On or about July 27, 1994, the individual defendant's decedent, Raymond C. Lemire, opened a securities account with Stratton Oakmont and executed a Customer Agreement (the "Agreement") with Stratton Oakmont's clearing broker, Adler, Coleman Clearing Corporation.

Two clauses of the Agreement are pertinent here. Through a choice-of-law clause, the parties agreed that all controversies arising under the Agreement "shall be governed by and construed, and the substantive rights and liabilities of the parties determined, in accordance with the laws of the State of New York." (Unger Aff. ¶ 13.) Through an arbitration clause, the parties further agreed that all controversies under the Agreement would be determined by arbitration to be held in accordance with the rules of either the New York Stock Exchange or the NASD. On or about August 16, 1994, Management Realty Corporation ("MRC"), of which Lemire was sole owner, opened an account at Stratton Oakmont. Lemire, in his capacity as MRC's president, signed a Customer Agreement identical to the one he signed upon opening his individual account. Lemire and MRC ("Lemire/MRC") stopped trading with Stratton Oakmont in September 1994.

On or about August 3, 1995, Lemire and MRC initiated an arbitration against Stratton Oakmont and three individual respondents, one of whom was Porush, by filing a Statement of Claim and a Uniform Submission Agreement with the NASD.[2] Lemire/MRC claimed that the arbitral respondents failed to disclose Stratton Oakmont's extensive disciplinary problems with the SEC and NASD, recklessly or intentionally misrepresented the stocks in which Lemire/MRC traded and in which Stratton

---

1. In a recent opinion, the Ninth Circuit described Porush as the "president, chief executive officer, majority owner, and control person of Stratton Oakmont." *Greening v. Stratton Oakmont, Inc.*, 113 F.3d 1241 (9th Cir.1997).

2. Paul F. Byrne, Compliance Director of Stratton Oakmont, and Patrick F. McDonnell, the broker Lemire dealt with, were the other two individual respondents.

Oakmont was a marketmaker, conducted unauthorized trading in the Lemire/MRC accounts, and illegally froze the Lemire/MRC accounts. The claimants sought $602,500 in compensatory damages, and $1,397,500 in punitive damages, treble damages, costs, interests, and attorneys' fees.

On August 10, 1995, Porush consented to submit the dispute to arbitration. On October 3, 1995, the law firm of Tenzer, Greenblatt, representing Porush and the other arbitral respondents, filed an answer and motions to dismiss the arbitral claim. The answer denied the material allegations in the Statement of Claim and asserted as affirmative defenses that punitive damages and attorneys' fees could not be awarded in the arbitration pursuant to New York law. The motion sought to dismiss all claims against Porush on the ground that the Statement of Claim failed to allege any wrongdoing by him, and to dismiss the punitive damages and attorneys' fees claims against all respondents on the ground that New York law does not permit such awards to be made in arbitration. The arbitration panel denied the motions to dismiss.

On or about February 5, 1996, nearly a year before the arbitration hearing took place, Porush was on notice that punitive damages might be awarded against him—a federal district court, presented with facts virtually identical to those here and relying on the Supreme Court's decision in *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), confirmed an arbitration award of punitive damages against Porush made by an NASD panel. *See Greening v. Stratton Oakmont, Inc.*, No. C–95–4288, 1996 WL 61095 (N.D.Cal. Feb 5, 1996), *aff'd*, 113 F.3d 1241 (9th Cir.1997). The court specifically rejected Porush's argument, virtually identical to the one he raises here, that New York law bars the arbitral award of punitive damages. *Id.*, 1996 WL 61095 at * 4.

The arbitration hearing took place on January 13, 1997. Although Tenzer, Greenblatt had withdrawn as Porush's counsel approximately one month earlier, Porush did not seek an adjournment or, as far as may be discerned from the record, attempt to communicate with either Lemire, Lemire's attorneys, or the NASD panel to advise them of this development. Porush did not attend the January 13 hearing, nor did any representative appear on his behalf. Porush did not submit any evidence to the panel after the hearing, nor does it appear that he communicated with the panel between the date of the hearing and March 12, 1997, the date the arbitration decision was rendered. On April 17, 1997, Porush, once again represented by Tenzer, Greenblatt, filed this motion to vacate.

### DISCUSSION

■ The Federal Arbitration Act embodies a strong presumption in favor of enforcing arbitration awards. *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 849 (2d Cir.1994) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see* 9 U.S.C. § 9 (court "must grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title"). Consequently, " 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.' " *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997)), *cert. denied*, —— U.S. ——, 118 S.Ct. 695, 139 L.Ed.2d 639 (1998); *see also Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir.1985) (limited review necessary for arbitration to serve as quick, inexpensive, informal means of private dispute resolution).

An arbitration award subject to review under the Federal Arbitration Act may be vacated where the arbitrators were guilty of misconduct or any other misbehavior by which the rights of any party have been prejudiced, or where the arbitrators exceeded their powers. 9 U.S.C. § 10(a)(3), (4). Additionally, courts have provided that an award may be vacated if rendered in manifest disregard of the law. *See, e.g., DiRussa,*

121 F.3d at 821; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir.1986). However, judicial inquiry under the "manifest disregard" standard is extremely limited:

> The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing principle but decides to ignore it or pay no attention to it.

*Bobker,* 808 F.2d at 933–34.

■ The party seeking to vacate an arbitration award bears the burden of establishing one of the grounds for relief and the showing required to avoid summary confirmation of the award is high. *Standard Microsystems,* 103 F.3d at 12. An award will not be vacated if there is even a "barely colorable justification" for the outcome reached, *Landy Michaels Realty Corp. v. Local 32B–32J,* 954 F.2d 794, 797 (2d Cir. 1992), even if the award is based on an error of fact. *Standard Microsystems Corp.,* 103 F.3d at 13; *Conntech Dev. Co. v. University of Conn. Educ. Properties, Inc.,* 102 F.3d 677, 687 (2d Cir.1996). In light of these principles, the Court considers each of Porush's arguments in favor of vacatur.

### Insufficient Evidence

Porush argues that the award against him must be vacated as arbitrary and capricious because Lemire/MRC failed to present proof from which an arbitrator could conclude that Porush, as opposed to the other arbitral respondents, was liable on any of the claims asserted. He further contends that Lemire/MRC's counsel misrepresented certain facts during the hearing, thus leading the arbitrators to an unsupported conclusion.

■ Under the circumstances presented here, however, Porush will not be heard to raise an issue regarding the purported insufficiency of the evidence upon which the arbitration panel based its decision. Porush consented to have the instant dispute arbitrated by an NASD panel, knew that damages, including punitive damages, might be awarded up to $2,000,000, and knew that at least one court, presented with virtually identical facts, had sustained an award of punitive damages against him. Porush, nevertheless, failed to challenge either the evidence, the offers of proof, or the legal theories presented by Lemire/MRC's counsel at the hearing, thereby impermissibly interfering with the process by which the arbitrators reached their conclusions on the facts and the law. "[A] party cannot complain about the nonproduction of evidence when it failed to offer such evidence itself . . . ." *Biotronik Mess–Und Therapiegeraete GmbH & Co. v. Medford Med. Instrument Co.,* 415 F.Supp. 133, 138 (D.N.J.1976) (relying upon *Catz Am. Co. v. Pearl Grange Fruit Exch., Inc.,* 292 F.Supp. 549 (S.D.N.Y. 1968)).

Contrary to plaintiff's impression, arbitration is not a trial run in which an arbitral respondent may sit silently by, take note of the evidence presented without attempting to clarify the matters presented to the arbitrators, and then, if the result turns out unfavorably, seek judicial relief on the ground that the arbitrators misapprehended the facts. *See Marino v. Writers Guild of Am., East, Inc.,* 992 F.2d 1480, 1483 (9th Cir.1993) ("a party may not sit idle through an arbitration procedure and then collaterally attack that procedure on grounds not raised before the arbitrators when the result turns out to be adverse"); *see also Ebasco Constructors, Inc. v. Ahtna, Inc.,* 932 P.2d 1312, 1317 (Alaska 1997) (failure to raise defense at arbitration hearing waived defense upon judicial review); *Foster v. City of Fairbanks,* 929 P.2d 658, 661 (Alaska 1996) (employee's failure to raise at arbitration hearing fact that she had not been recalled to same position estopped her from challenging award based on arbitrator's erroneous belief that she had been recalled to same position). If parties to arbitration could play the game that Porush and his attorneys played here, arbitration would lose its vitality as an alternative to litigation, a result not consistent with the strong federal policy favoring the enforcement of arbitration agreements and the confirmation of arbitration awards.

## Misconduct by the Arbitrators

■ Porush further argues that vacatur is required because the arbitrators engaged in misconduct. The alleged misconduct lay in "permitting the claimants to proceed against Porush at the hearing under a theory not presented in the Statement of Claim, without giving him notice or opportunity to respond to the new charges." Pltfs. Mem. at 10. Porush refers to Lemire/MRC's contention that Porush made fraudulent statements to a Wall Street Journal reporter concerning a stock, Octagon, Inc., that Lemire/MRC had purchased at the urging of Stratton Oakmont. Porush's argument is frivolous. The Statement of Claim filed by Lemire/MRC expressly names Porush as a respondent, states in its opening paragraph that claimants seek damages for, *inter alia,* "reckless or intentional misrepresentations concerning stock in which [Stratton Oakmont] was a marketmaker," and expressly refers both to respondents' conduct in encouraging Lemire/MRC to purchase the shares of Octagon, Inc., and to Porush's statements to the Wall Street Journal. The record belies Porush's contention that he was caught by surprise. Moreover, Porush waived the issue because he failed to appear at the hearing where, clearly, he could have raised the argument he now puts before the Court.

## Excess of Authority

Next, Porush contends that the arbitrators exceeded their authority by awarding punitive damages because "the parties did not submit the issue of punitive damages to the arbitrators for decision." Pltfs. Mem at 16. He reaches this conclusion by noting that his submission agreement stated that it was "subject to the affirmative defenses contained in [his Answer to Lemire/MRC's claim]," *id.,* one of which was that the arbitration was subject to New York law and New York law bars arbitrators from awarding punitive damages.

Plaintiff's contention to the contrary, it is clear that the issue of punitive damages was placed before the arbitrators. Porush's inclusion of an affirmative defense against punitive damages and his motion to dismiss such claims is a concession that the punitive damages issue was before the arbitrators. The argument fails because it mistakes a defense to punitive damages for an exclusion from the scope of arbitrability.

■ In any event, the Agreement's arbitration clause expressly states that the arbitration may be conducted under the NASD's Code of Arbitration Procedure which permits the imposition of punitive damages. *See Americorp Sec., Inc. v. Sager,* 239 A.D.2d 115, 656 N.Y.S.2d 762, 764 (1st Dep't 1997); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Adler,* 234 A.D.2d 139, 651 N.Y.S.2d 38, 38–39 (1st Dep't 1996). A manual provided to NASD arbitrators expressly notes that the issue of punitive damages may arise with great frequency in arbitrations and adds that "parties to arbitration are informed that arbitrators can consider punitive damages as a remedy." *Mulder v. Donaldson, Lufkin & Jenrette,* 224 A.D.2d 125, 648 N.Y.S.2d 535, 538 (1st Dep't 1996). In short, this Court fully agrees with the observation that:

> The Customer Agreement's reference to NASD as one of the forums of arbitration and the Uniform Submission Agreements executed by the parties made clear that the parties were subjecting themselves to NASD's rules, which clearly permit arbitrators to award punitive damages.

*Arbitration between R.C. Layne Constr. Inc. and Stratton Oakmont, Inc.,* 228 A.D.2d 45, 651 N.Y.S.2d 973, 976 (1st Dep't 1996).[3] The issue was properly before the arbitrators.

Porush next contends that the arbitrators exceeded their authority in awarding $496,825 in compensatory damages, representing out-of-pocket loss, when a portion of that out-of-pocket loss was in position to be returned to Lemire/MRC. During the hearing, Lemire/MRC's counsel indicated that $62,510.37

---

3. The Court notes its displeasure with plaintiff's counsel for not bringing this case to the Court's attention even though he briefed it on behalf of Stratton Oakmont for the Appellate Division. The Court further notes that the argument raised here was raised in identical terms and rejected in *R. Allen Fox, Ltd. v. Stratton Oakmont, Inc.,* No. 93 C 2228, 1996 WL 288771 (N.D.Ill. May 26, 1996), another case not brought to the Court's attention by plaintiff's counsel.

of Lemire/MRC's funds were in the hands of Stratton Oakmont's clearing broker, Adler, Coleman, and was subject to retrieval upon execution of a satisfactory release. Counsel further indicated that another $100,000 could be released from another broker, Joseph Dillon & Co. (not a party to the arbitration), if the NASD arbitration panel ordered Joseph Dillon & Co. to make such release.

[■] Plaintiff's argument is unavailing. Despite the nomenclature, the gist of Porush's argument is simply that the arbitrators miscalculated the amount of compensatory damages. The arbitrators did not, nor were they required to, provide an explanation for their decision to award $496,825 in compensatory damages. A court must confirm an arbitration decision if any ground for the decision can be inferred from the facts of the case, even if the ground is based on an error of fact. *Standard Microsystems*, 103 F.3d at 13. Such a ground for decision exists here because there is no indication in the record that any funds were actually released to Lemire/MRC from either Adler, Coleman or Joseph Dillon & Co. The arbitrators could have concluded that Lemire/MRC required the full $496,825 to be made whole. This may have been an error in fact, but there is, at the very least, a colorable justification for the award. In any event, Porush waived any argument on the matter by failing to attend the arbitration hearing where he could have raised the issue.

*Punitive Damages*

[■] Porush objects to the imposition of punitive damages on the ground that the arbitrators imposed punitive damages under New Hampshire law, notwithstanding the fact that the arbitration agreement clearly provided for the application of New York law. The Court agrees that the application of New Hampshire law was error, but because the arbitrators could have awarded punitive damages under the Agreement, even with its New York choice-of-law clause, the arbitrators' error was harmless.

The Agreement's choice-of-law clause provides, in pertinent part, that the Agreement "shall be governed by and construed, and the substantive rights and liabilities of the parties determined, in accordance with the laws of the State of New York." Pursuant to *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 834, 353 N.E.2d 793 (1976) ("the Garrity Rule"), New York law forbids arbitrators to award punitive damages. Therefore, Porush argues, had New York law been applied, punitive damages could not have been awarded. Plaintiff's argument is foreclosed by the Supreme Court's ruling in *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

In *Mastrobuono*, a securities brokerage firm and its customers entered into a standard-form Client Agreement ("agreement"). *Id.* at 54, 115 S.Ct. 1212. As here, the agreement provided for arbitration in accordance with the rules of the NASD. *Id.* at 58, 115 S.Ct. 1212. The agreement was silent as to punitive damages but stated that the agreement "shall be governed by the laws of the State of New York." *Id.* After a hearing, an arbitration panel awarded plaintiffs compensatory and punitive damages. *Id.* at 54, 115 S.Ct. 1212. On review, the district court held that the arbitrators lacked power to award punitive damages; the Seventh Circuit affirmed. *Id.* The issue before the Supreme Court was whether a contractual choice-of-law provision may preclude an arbitral award of punitive damages that otherwise would be proper. *Id.* at 55, 115 S.Ct. 1212. Reversing the Seventh Circuit, the Court held that the arbitral award of punitive damages should have been enforced as falling within the scope of the contract. *Id.* at 63–64, 115 S.Ct. 1212.

The agreement in *Mastrobuono* did not contain an express reference to punitive damages and was ambiguous inasmuch as the NASD rules referred to in the arbitration clause provide for the award of punitive damages while the New York law selected through the choice-of-law clause forbids them. The Court resolved the ambiguity both by reference to public policy and through two canons of statutory construction. As a matter of public policy, "when a court interprets [this sort of ambiguity] in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring

arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* at 63, 115 S.Ct. 1212 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). As a matter of statutory construction, the Court construed the agreement against the party that drafted it, namely, the brokerage house respondent. Finally, the Court noted that it is "a cardinal principle of contract construction ... that a document should be read to give effect to all its provisions and to render them consistent with each other," and concluded:

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

*Id.* at 64, 115 S.Ct. 1212. Thus, unless the arbitration agreement provides an "unequivocal exclusion of punitive damages claims" from the scope of arbitration, it will be read to empower arbitrators to award punitive damages. *Id.* at 60, 115 S.Ct. 1212.

Porush argues that *Mastrobuono* is inapposite because the choice-of-law clause in the Agreement provides that New York law shall determine the substantive rights and liabilities of the parties whereas the agreement in *Mastrobuono* provided that the agreement would be governed by New York law. According to plaintiff, the difference in language takes the present case outside the reach of *Mastrobuono* and demonstrates a "clear contractual intent" by the parties to

exclude punitive damages from the scope of the arbitration. This Court disagrees.

The choice-of-law clause at issue here says nothing about the authority of the arbitrators to award punitive damages and, hence, does not amount to an unequivocal agreement to exclude such relief. Moreover, the Supreme Court anticipated Porush's argument and rejected it. The Court observed that even if the choice-of-law clause before it were construed to include New York's "substantive rights and obligations," that clause would be ineffective to demonstrate a clear intent to exclude punitive damages absent an expression of the parties' intent regarding the "State's allocation of power between alternative tribunals." *Id.* at 60, 115 S.Ct. 1212. In short, it is clear that the choice-of-law clause at issue here does not reflect an unequivocal agreement between the parties to exclude punitive damages from the scope of arbitration.[4]

The Court notes that Porush raised the identical argument on identical facts in *Greening v. Stratton Oakmont, Inc.,* No. 95-4288, 1996 WL 61095 (N.D.Cal. Feb 5, 1996), *aff'd,* 113 F.3d 1241 (9th Cir.1997); his argument was rejected then, just as it is now.[5] Stratton Oakmont raised the same argument on the same facts in *R. Allen Fox, Ltd. v. Stratton Oakmont, Inc.,* No. 93 C 2228, 1996 WL 288771 (N.D.Ill. May 29, 1996), and *Arbitration between R.C. Layne Constr., Inc. and Stratton Oakmont, Inc.,* 228 A.D.2d 45, 651 N.Y.S.2d 973 (1st Dep't 1996), both with the same result as in *Greening. See also Americorp Securities,* 656 N.Y.S.2d at 764 (choice-of-law clause stating that the "rights and liabilities" of the parties shall be determined in accordance with New York law did not amount to unequivocal exclusion of punitive damages from scope of arbitration); *cf. Mulder,* 648 N.Y.S.2d at 538 ("In sum, the decision of the Supreme Court in *Mastrobuo-*

---

4. Porush further asserts that *Mastrobuono* is inapposite because the Court resolved the ambiguity in the agreement at issue by construing the ambiguity against the drafter. Porush asserts that he is not the drafter of the Agreement and, hence, should not be subject to the adverse construction. The argument mischaracterizes the Supreme Court's ambiguity analysis which was premised principally on public policy and the rule that, where possible, conflicting contractual

terms should be read to give each other effect. Because these two factors clearly apply to the instant matter, *Mastrobuono* cannot be distinguished on the basis offered by plaintiff.

5. The *Greening* decision is another highly persuasive but adverse authority that plaintiff's counsel failed to bring to the Court's attention.

*no* makes it clear that, with respect to arbitration proceedings governed by the FAA which preempts the Garrity Rule, the arbitration of punitive damage claims is required except where the parties have unequivocally agreed otherwise.").

■ Porush further contends that the arbitral award of punitive damages violates his right to due process under the Fifth and Fourteenth Amendments. This contention is without merit. Simply put, private arbitrators are not state actors and, absent state action, there can be no violation of either amendment. *See Davis v. Prudential Securities, Inc.,* 59 F.3d 1186, 1190–93 (11th Cir. 1995); *Austern v. Chicago Bd. Options Exch., Inc.,* 716 F.Supp. 121, 125 (S.D.N.Y. 1989), *aff'd,* 898 F.2d 882 (2d Cir.1990).

*Attorneys' Fees*

■ Reprising the argument raised earlier regarding punitive damages, Porush contends that the arbitrators exceeded their authority by awarding attorneys' fees because New York law bars arbitrators from awarding such fees. The Second Circuit, in a case involving an NASD arbitration of a dispute between a securities broker and its customer, has already held that arbitrators may award such fees unless the parties expressly exclude them from the scope of arbitration:

> [A] choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the right to arbitrate claims for attorneys' fees [citing *Mastrobuono* ]. Therefore, [broker] cannot rely on the New York choice-of-law provision to prevent the [customer] from seeking in arbitration a remedy that is not foreclosed by the Agreement.

*PaineWebber, Inc. v. Bybyk,* 81 F.3d 1193, 1202 (2d Cir.1996). Porush does not attempt to distinguish *Bybyk,* and the Court finds it to be controlling authority on this issue.

*Procedural Misconduct*

■ Finally, Porush contends that the award must be vacated because the arbitrators erroneously considered materials that Lemire/MRC failed to send him prior to the arbitration and took the testimony of witnesses whom Lemire/MRC failed to identify before the hearing in violation of NASD Code of Arbitration Procedure, Rule 10321(c). It does not follow, however, that the award must be nullified. The NASD Code does not have the force of law. *Card v. Stratton Oakmont, Inc.,* 933 F.Supp. 806, 814 (D.Minn.1996). Porush "must point to a statutory violation to warrant vacation of an arbitral award, not a violation of the Code of Arbitration Procedure." *Id.* at 815. Porush cites no authority suggesting that the award must be vacated for these procedural violations. In any case, Porush waived any complaint about the conduct of the arbitration by not presenting his objections to the arbitrators in the first instance.

### CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the arbitration award is denied and defendants' cross-motion to confirm the award is granted. The award is confirmed in all respects. The Clerk of the Court shall enter judgment in favor of defendants, with prejudice and with costs.