132 F.Supp.2d 285 (2001)
In the Matter of the Arbitration Between CRAGWOOD MANAGERS, L.L.C., Petitioner,
and
RELIANCE INSURANCE COMPANY, Respondent.
No. 00 CIV 9314 LLS.
United States District Court, S.D. New York.
February 26, 2001.
*286 Shearman & Sterling, New York City (Henry Weisberg, Brian H. Polovoy, Mark S. McNeill, of counsel), Broderick, Stirn & Regan, Washington, DC (Richard P. Regan, of counsel), for Petitioner.
Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Brad S. Karp, Claudia L. Hammerman, of counsel), for Respondent.

OPINION AND ORDER
STANTON, District Judge.
Petitioner Cragwood Managers, L.L.C. ("Cragwood") moves pursuant to Section 10 of the Federal Arbitration Act to vacate or modify an interim arbitration award[1] requiring it to post a $4 million bond payable to Respondent Reliance Insurance Company ("Reliance") to secure a portion of Reliance's counterclaims. Reliance cross-moves to confirm the arbitration award.
It is evident that Cragwood's current expenditures, in large part to pay its own and its chief executive officer John E. Pallat III's legal fees,[2] if allowed to continue will eventually deplete its assets[3] so that nothing will be left for Reliance to recover if it wins the arbitration. For that reason, the arbitrators required $4 million in security, which would allow Reliance to recoup its costs and have some recovery should it prevail in the arbitration.
Cragwood now argues that the award should be vacated primarily because, if forced to post the award, it will no longer have any funds to pay its legal fees in the arbitration or in a number of other legal proceedings in which it is currently involved.[4]
Everything presented to the court was previously presented to the arbitrators before they made their decision, except for Pallat's affidavit disclaiming liability on the merits. Although Pallat had the opportunity *287 to present that material to the arbitral panel, he chose not to do so.

Discussion
"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir.1993).
The party seeking to vacate the award bears the burden of proof. Id. at 112. If "a barely colorable justification" for the arbitration award exists, the award should be confirmed. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, 954 F.2d 794, 797 (2d Cir.1992).
Under Section 10 of the Federal Arbitration Act (the "F.A.A."), a court may vacate an arbitral award:
(1) Where the award was procured by corruption, fraud, or undue means.
(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10(a)(1)-(4).
The gravamen of Cragwood's argument rests on the concept of "fundamental fairness". Under section 10(3) of the F.A.A., courts may review arbitral awards to determine whether parties have been denied a fundamentally fair hearing. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir.1997)("Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review.... Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.") (internal quotations omitted); Areca, Inc. v. Oppenheimer & Co., Inc., 960 F.Supp. 52, 54-55 (S.D.N.Y.1997)("the [arbitrator's] misconduct must amount to a denial of fundamental fairness of the arbitration proceeding to warrant vacating the award.") (quotation omitted). Arbitral "[m]isconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." Shamah v. Schweiger, 21 F.Supp.2d 208, 214 (E.D.N.Y.1998)(quotation omitted).

Whether the amount of the interim security award violates "fundamental fairness" under the F.A.A.
Cragwood argues that requiring it to post a bond equal to almost all of its current cash assets is "fundamentally unfair," because it currently has only $4.07 million in cash and, if required to post the bond, will likely be forced into bankruptcy and be unable to pay its counsel to prosecute its claims in the arbitration, defend itself against Reliance's counterclaims, or litigate the other actions in which it is involved.
While at first blush that argument has strong appeal, it does not overcome the arbitrators' interim award.
It is only conjecture whether the award will force Cragwood into bankruptcy. Cragwood may yet have available other unexplored sources of funds (Reliance suggests Mr. Pallat may be such a source). Nor does posting the security inevitably deprive Cragwood of counsels' services: even in bankruptcy, the Trustee's counsel pursue and defend claims for the debtor's advantage.
*288 Most significantly, Cragwood is no longer a going business firm. It is already winding down; it has no clients and only a few employees who primarily assist in Cragwood's litigation. In Texaco Inc. v. Pennzoil Co., 784 F.2d 1133 (2d Cir.1986), rev'd on other grounds, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), the Second Circuit expressed concern that if a huge supersedeas bond were required, Texaco "would probably be forced into bankruptcy or litigation." Id. at 1138. In this case, Cragwood is already effectively in liquidation.
District courts have not hesitated to confirm drastic interim security awards. See British Ins. Co. of Cayman v. Water Street Ins. Co., Ltd., 93 F.Supp.2d 506, 513, n. 9 (S.D.N.Y.2000) (confirming interim security award even though respondent argued that it "equals approximately 85% of the available assets of Water Street, and about 140% of its net worth and would have the effect of putting Water Street out of business [and] would provide BICC with an unwarranted preference over all policy-holders of Water Street.") (internal quotations omitted)(brackets in original); Blue Sympathy Shipping Co. Ltd. v. Serviocean Int'l, S.A., No. 94 Civ. 2323, 1994 WL 597144, at *2 (S.D.N.Y. July 6, 1994)(confirming interim security award "fully within the arbitrators' power to impose" despite respondent's representation it was "financially incapable of posting the security"); Polydefkis Corp. v. Transcontinental Fertiliser Co., No.Civ.A.95-0242, 1996 WL 683629, at *3 (E.D.Pa. Nov. 26, 1996)("Respondent's efforts to justify a stay of confirmation [of an interim security award] because of the consequences a denial would have on its ability to continue its business are unavailing."); Forum Insurance Co. v. First Horizon Insurance Co., No. 87 C 2177, 1989 WL 65041, at *6 (N.D.Ill. June 8, 1989) (stating that "A party's financial inability to pay has never been the basis for declining to confirm an arbitration award.").
Finally, in ordering such interim relief, the arbitrators did nothing which diminishes their responsibility to allow the parties to develop the record, and to accord them a full and fair hearing on the merits of their claims. A "threshold security order that deprives a party of a fair opportunity to contest the merits of a dispute may well constitute misconduct under the FAA," Northwestern Nat'l Ins. Co. v. Generali Mexico Compania De Seguros, S.A., No. 00 Civ. 1135, 2000 WL 520638, at *9 (S.D.N.Y.2000), and a final award may not be confirmed if both parties are not accorded a full fair hearing on the merits of their claim. See British Ins., 93 F.Supp.2d at 507-508 (that "the extremely large amount of the security ... may make it impossible for Water Street to obtain a resolution on the merits ... would present issues of fundamental fairness if a final award were issued without the development of an additional record on the merits.").
Cragwood cites cases which do not involve arbitrations, but judicial actions involving supersedeas bonds, preliminary injunctions, and denial of counsel by ex parte freezing of a criminal defendant's assets. Those cases rest on a criminal defendant's Sixth Amendment right to counsel, or proper court procedures. They are not applicable to arbitration.
"[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review for the courtroom, for the simplicity, informality, and expedition of arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991). Thus, "[o]ne choosing arbitration should not expect the full panoply of procedural and substantive protection offered by a court of law." Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1011 (10th Cir.1994).
The cases cited by Cragwood concerning supersedeas bonds and preliminary injunctions are inapposite, as they involve equitable balancing that is not the province of a *289 court reviewing an arbitration award under the F.A.A.

Whether lack of a formal hearing violates Section 10(a)(3)
Cragwood also argues that the interim award violates § 10(a)(3) because it was issued without a formal oral hearing.
"The lack of oral hearings does not amount to the denial of fundamental fairness required to warrant vacating the award," Griffin Industries, Inc. v. Petrojam, Ltd., 58 F.Supp.2d 212, 220 (S.D.N.Y.1999)(internal quotation omitted), so long as the arbitrator's decision to render a decision solely on documentary evidence is reasonable. Id.
Both parties were given every opportunity to present evidence. Each party submitted extensive briefs and numerous exhibits and affidavits to the panel before its initial determination, and additional supporting materials (through letters and conference calls) before each of the panel's subsequent re-considerations. Cragwood did not request an oral hearing at any point in the arbitration proceedings.
The arbitrators' decision to issue the interim award on the voluminous papers submitted was reasonable, and not a violation of fundamental fairness.

Whether the arbitral award violated Pennsylvania law
Cragwood argues that the interim award is a "nullity" because it was not signed by all three panel members or delivered personally or by registered mail as required under Pennsylvania's Uniform Arbitration Act, 42 Pa.C.S.A. § 7310(a)(West 1998).
The choice of law provision in the Reliance Facility Agreement which contains the arbitration clause states that the agreement "shall be construed and governed by the laws of Pennsylvania, ... provided, however, that nothing herein shall be deemed to restrict the discretion of the arbitrators set forth in Paragraph 16 of this Agreement." Facility Agmt. at 7. Paragraph 16 does not refer to Pennsylvania law, but rather states that any arbitration "will be conducted under the Federal Arbitration Act." Id. The parties' agreement to arbitrate does not satisfy the Pennsylvania requirement that for its Act to govern, "the agreement must expressly provide for arbitration under the Act." Dearry v. Aetna Life & Cas. Ins. Co., 415 Pa.Super. 634, 610 A.2d 469, 471 (1992). Thus, the fact that the interim award was not signed by all three arbitrators or delivered personally or by registered mail is of no consequence.

Conclusion
For the reasons set forth above, petitioner's motion to vacate the interim arbitration award is denied. Respondent's cross-motion for judgment confirming the interim award is granted. Respondent's application for costs and attorney's fees is denied: the provision in the arbitration clause providing for such fees (see Facility Agmt. at 8-9) relates only to final awards, not interim awards.
So ordered.
NOTES
[1] The arbitrators issued an Interim Final Order dated November 13, 2000 requiring Cragwood to post a $5 million bond. Then, in response to Cragwood's request for reconsideration, the arbitrators issued an "Amendment to Interim Final Order Dated November 13, 2000" dated December 4, 2000, reducing the amount of required security to $4 million. The arbitrators confirmed that order in the "Consideration of Request to Vacate or Modify Amended Interim Final Order dated December 4, 2000 and other Matters" dated December 14, 2000.
[2] Mr. Pallat is currently litigating the same issues as are involved in the arbitration as defendant in an action by Reliance and Reliance Group Holdings in this court.
[3] Although as of November 22, 2000, Cragwood had $4,508,484.67 in cash, in its letter to the Court dated February 16, 2001, Cragwood stated that it currently had $4,073,351.46 in cash and outstanding legal bills of approximately $370,000, as well as additional unbilled expenses.
[4] In its February 16 letter, Cragwood stated that it is currently defending an appeal by 13 insurance companies of a judgment by the New York Supreme Court dismissing the companies' claims of fraud against it. Cragwood is also a defendant in a recently stayed lawsuit brought by Zurich Reinsurance (North America) in Washington state court. Also, Reliance and Reliance Group Holdings, Inc. have served a subpoena on Cragwood in connection with their lawsuit in this court against Mr. Pallat.